IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

HOLLIS ALLEN THRASHER )
)
v. ) No. 2:19-0010
)
ANDREW M. SAUL )
Commissioner of Social Security[1] )

**To: The Honorable Waverly D. Crenshaw, Chief District Judge**

# REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (*see* Docket Entry ("DE") 15), to which Defendant has filed a response. *See* DE 17. This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a Report and Recommendation. *See* DE 4.

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion for judgment on the administrative record (DE 15) be **GRANTED,** the decision of the Commissioner be **REVERSED**, and this matter be **REMANDED** for further administrative proceedings consistent with this opinion.

---

[1] Andrew M. Saul has been appointed Commissioner of the Social Security Administration. He is therefore automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

## I. INTRODUCTION

Plaintiff filed an application for DIB on January 4, 2016 in which he asserted that he was unable to work due to finger/hand numbness, neuropathy, a spinal cord injury, and bulging discs. *See* Transcript of the Administrative Record (DE 9) at 76, 89.[2] He alleged a disability onset date of December 31, 2009. AR 76.

Plaintiff's applications were denied initially and upon reconsideration AR 76, 88. Pursuant to his request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Donna Lefebyre on August 25, 2017. AR 38. On February 14, 2018, the ALJ denied the claim. AR 7-9. On July 10, 2018, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision (AR 1-3), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed and this Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

As part of the decision, the ALJ made the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of December 31, 2009 through his date last insured of December 31, 2014 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairment: degenerative disc disease (20 CFR 404.1520(c)).

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). He could lift up to 20 pounds occasionally and 10 pounds frequently. He could occasionally push or pull with the lower extremities. He could stand and walk for up to two hours and sit for up to six hours in an eight-hour workday with normal breaks. He could occasionally climb ramps or stairs. He could not climb ladders or scaffolds. He could occasionally balance, stoop, kneel, crouch and crawl. He could perform jobs that did not require more than occasional exposure to excessive vibration. He could perform jobs that did not require more than occasional operation of moving and hazardous machinery. He could not work around unprotected heights.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 17, 1972 and was 42 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 31, 2009, the alleged onset date, through December 31, 2014, the date last insured (20 CFR 404.1520(g)).

AR 12-18.

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). If the issue of disability can be resolved at any

point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. § 404.1520(a)(4). At step one, the claimant must show that he is not engaged in "substantial gainful activity" at the time disability benefits are sought; at step two, the ALJ considers whether one or more of the claimant's alleged impairments are "severe" in nature; at step three, the ALJ determines whether the impairments at issue meet or equal one of the Listings contained in the regulatory List of Impairments; at step four, the ALJ considers the claimant's residual functional capacity ("RFC") and determines whether the claimant can still perform past relevant work; at step five, the burden of proof shifts to the ALJ to assess whether the claimant, after establishing that past relevant work is no longer possible, is capable of performing other types of work. *Id*. § 404.1520(a)(4).

If the ALJ determines at step four that the claimant can perform past relevant work, the claimant is "not disabled" and the ALJ need not complete the remaining steps of the sequential analysis. *Id*. § 404.1520(a)(4)(iv). "Past relevant work" is defined as "substantial gainful activity" that a claimant has done within the past 15 years and that lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1). If the claimant is unable to perform past relevant work, however, the ALJ proceeds to step five to determine whether, in light of the claimant's RFC, age, education, and work experience, the claimant can perform other substantial gainful employment and whether such employment exists in significant numbers in the national economy. *Id*. § 404.1520(a)(v). In evaluating a claimant's RFC, the ALJ must consider the combined effect of all of the claimant's impairments, mental and physical, severe and nonsevere. 42 U.S.C. §§ 423(d)(2)(B), (5)(B).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in

evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (*Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court is required to accept the ALJ's explicit findings and ultimate determination unless the record as a whole is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing 42 U.S.C. § 405(g)).

### B. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved the Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps, but found at step three that Plaintiff was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ found that Plaintiff's RFC allowed him to perform light work with express limitations to account for his severe impairments, and that considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers, through the date last insured, in the national economy that Plaintiff could perform. AR 12-18.

### C. Plaintiff's Assertions of Error

Plaintiff's alleges that the ALJ erred by (1) failing to properly evaluate his complaints of disabling pain, and (2) improperly discounting the opinion of Dr. Leonardo Rodriguez-Cruz. DE 16 at 12-17. Plaintiff therefore requests that this case be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration. *Id*. at 17.

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). The Court addresses Plaintiff's assertions of error below.

**1. The ALJ's evaluation of Plaintiff's pain.**

The ALJ is required to assess any subjective complaints of pain by a claimant under a two-step process set forth by the Sixth Circuit in *Duncan v. Sec'y of Health & Human Servs.,* 801 F.2d 847 (6th Cir. 1986) and later codified by the Commissioner. *See* 20 C.F.R. § 404.1529. *See also* SSR 16-3p, 2017 WL 5180304 (October 25, 2017). Pursuant to this standard, the ALJ must (1) examine whether the record contains objective medical evidence of an underlying medical condition and, if such evidence exists, (2) determine whether the objective medical evidence confirms the alleged severity of pain arising from the condition or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *Duncan,* 801 F.2d at 853. The second prong of this analysis requires the ALJ to consider a claimant's statements regarding the "intensity, persistence, and limiting effects of the symptoms" and "evaluate whether the statements are consistent with objective medical evidence and other evidence." SSR 16-3p, 2017 WL 5180304, at *6.[3] In doing so, the ALJ

---

[3] SSR 16-3p replaced the Commissioner's previous ruling with respect to subjective allegations of pain, SSR 96-7p, which required the ALJ to make a "credibility" determination based on the claimant's statements about the limiting effects of her alleged symptoms. 1996 WL 374186, at *3 (July 2, 1996). There is no indication that SSR 16-3p abrogated the extensive case law pertaining to credibility evaluations under SSR 96-7p. *See Dooley v. Comm'r of Soc. Sec.*, 656

must consider factors such as: the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and other factors concerning the claimant's functional limitations and restrictions due to pain. 20 C.F.R. § 404.1529(c)(3).

Plaintiff contends that the ALJ erred by concluding that his allegations of disabling pain were "not entirely consistent with the medical evidence and other evidence in the record[.]" AR 14. Plaintiff claims that the record demonstrates that he suffers from substantial pain, although the only evidence cited in his brief is an imaging study of his cervical spine conducted on July 13, 2015 that shows disc protrusion at the C6-7 level with cord impingement on the left side and moderate foraminal stenosis at the C5-6 level. AR 323-24. Plaintiff argues that this condition is of such a severity that it can reasonably be expected to produce disabling pain by noting that he has been prescribed pain medication. DE 16 at 13.

While Plaintiff's brief does not necessarily make the most compelling case for remand, the Court agrees that the ALJ's conclusion with respect to Plaintiff's claims of disabling pain is not supported by substantial evidence. The ALJ provided the following reasoning for discounting Plaintiff's allegations:

> The clinical exams, objective imaging studies, and course of treatment are inconsistent with the work preclusive symptoms and limitations that the claimant alleges …. The claimant had cervical spine surgery in July 2015 …. However, the record of treatment during the period under adjudication does not support a finding that the claimant was disabled and unable to work. The record as a whole supports the finding that the claimant could perform a reduced range of light work as described in the residual functional capacity.

F. App'x 113, 119, n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" only to "clarify that subjective symptom evaluation is not an examination of an individual's character"). The Court will therefore continue to refer to the ALJ's evaluation of Plaintiff's allegations of disabling pain as the "credibility finding."

AR 16. The ALJ thus bases her credibility finding primarily on the purported lack of evidence over the period of time between the alleged onset date, December 31, 2009, and Plaintiff's date last insured ("DLI"), December 31, 2014. The ALJ's focus on the relevant time period is certainly appropriate given that a claimant can only establish his entitlement to disability benefits by demonstrating that he became "disabled" prior to the DLI. *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) (citing 42 U.S.C. §§ 423(a), (c)).

However, this does not mean that evidence of disability outside the applicable time period is irrelevant to the ALJ's analysis. To the contrary, the Sixth Circuit has made clear that such evidence "must be considered to the extent it illuminates [the] claimant's health before [the DLI]." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (citing *Martonik v. Heckler,* 773 F.2d 236, 240-41 (8th Cir. 1985)). *See also Aplet v. Sec'y of Health & Human Servs.*, 980 F.2d 729 (table), 1992 WL 348948, at *4 (6th Cir. November 24, 1992) (noting that even evidence compiled "years later" is "relevant to a determination of disability before the expiration of the individual's insured status if that evidence relates back to the relevant period"). This is especially pertinent to the instant case given that the cervical spine surgery Plaintiff underwent in July 2015, just six months after the DLI, was intended to improve a "gradually progressive greater than 2-year history of myelopathy[.]" AR 317. Such evidence appears to be consistent with Plaintiff's testimony that he was experiencing neuropathy and problems walking at least by early 2014 (AR 53-56) and rebuts the ALJ's blanket suggestion that the existence of these symptoms in 2015 is immaterial to the credibility of Plaintiff's allegations. *Cf. Abbomerato v. Comm'r of Soc. Sec.*, No. 5:14-cv-391, 2014 WL 6879330, at *11 (N.D. Ohio Dec. 4, 2014) ("A gradual onset and worsening of lower back complaints *after* the date last insured is not relevant to [the claimant's] limitations prior to the date last insured.") (emphasis added).

9

The Court also notes that the ALJ's selective discussion of the pre-DLI treatment simply ignores relevant evidence in support of Plaintiff's allegations regarding the severity of his symptoms. The ALJ relies heavily on three notes documenting Plaintiff's treatment at Byrdstown Medical Center: a clinical visit on November 29, 2010 (AR 273), a clinical visit on September 16, 2013 (AR 265), and a radiology report concerning Plaintiff's lumbar spine from November 11, 2013. AR 285. The ALJ cites these notes to support her favorable weighing of a state agency physician's opinion, her decision to discount the opinion of a treating physician, and her credibility determination. AR 15-16. The flaw with the ALJ's analysis is, however, that the two clinical notes predate the onset of Plaintiff's complaints of radiating back pain, which do not appear in the record until November 11, 2013 when he reported stiffness and radicular bilateral leg pain to his treating nurse practitioner. AR 262-63. The ALJ in fact fails to mention this initial report of bilateral leg issues, which is significant given that the records from November 11, 2013 through the DLI consistently demonstrate problems with radiating pain and ambulation.

For example, on January 13, 2014, Plaintiff reported lower back pain with associated stiffness, numbness in his thighs, tingling in his feet, an unsteady gait, and frequent falling. AR 235-36. On March 10, 2014, he reported that physical therapy had not lessened his continued lower extremity pain. AR 233-34. While the ALJ at least acknowledged the findings from these two office visits (AR 14), she failed to mention that Plaintiff's leg pain and accompanying symptoms were present over the next four visits, all of which took place prior to the DLI. AR 248-56. The note documenting Plaintiff's final visit in 2014 indicates continued neuropathic pain with tingling and numbness, while he again reported that physical therapy was not helping (AR 255), pain medication did not relieve his symptoms (AR 252), and even increases in his pain medication dosage were ineffective. AR 248, 250-51. None of these records are referenced in the ALJ's

opinion, which, in light of the crucial question of whether Plaintiff's disabling symptoms were present prior to December 31, 2014, constitutes reversible error. *See Craig v. Colvin*, No. 3:12-cv-0333, 2014 WL 1287178, at *12 (M.D. Tenn. Mar. 28, 2014) ("While an ALJ need not discuss every piece of evidence in the record he also may not ignore an entire line of evidence that is contrary to the ruling.") (internal citations and quotations omitted).

This finding is bolstered by evidence showing that Plaintiff's symptoms continued into 2015. On March 9, 2015, just three months after the DLI, Plaintiff again exhibited neuropathic symptoms in his lower extremities, which included pain, tingling, and numbness. AR 245. He reported no improvement with his pain medication, which prompted the provider to again increase his dosage. AR 246. The same symptoms were present during follow-up encounters on May 26 and June 23 of 2015. AR 239, 242. The provider indicates in the May 26 office note that Plaintiff's lower extremity neuropathy was "diagnosed several months ago" (AR 242), which is consistent with a July 7, 2014 note that identifies Plaintiff's condition as "neuropathy pain of lower extremities." AR 248. Such evidence is again consistent with Plaintiff's testimony, which included a claim that he experienced the same neuropathy symptoms in 2014 and 2015. AR 53-56.

Defendant contends that the "large gap in care" between Plaintiff's last documented visit in 2014 and his cervical surgery in July of 2015 supports the ALJ's conclusion that the 2014 symptoms were not disabling. DE 17 at 7-8. Defendant focuses on the fact that Plaintiff did not attend a neurology consultation with Dr. Leonardo Rodriguez-Cruz until June of 2015 to argue that "it is reasonable to assume that Plaintiff's capabilities were greater in December 2014 than at the time of surgery." *Id*. at 8. Yet Plaintiff testified that he actually attempted to see a different neurosurgeon, Dr. Joseph Jestus, prior to his visit with Dr. Rodriguez-Cruz in June of 2015. AR 51-

52.[4] Although Plaintiff's testimony is not the model of clarity, he claims to have gone to Dr. Jestus' office just days after his provider referred him for the neurological consultation, although he was only given the opportunity to see one of Dr. Jestus' assistants. AR 51-52. Notably, the ALJ appears to have dismissed Plaintiff's attempt to explain why he was unable to treat with Dr. Jestus during the administrative hearing by asking Plaintiff's counsel to "focus more on the claimant's condition rather than kind of a history[.]" AR 52-53.

Additionally, and more consequential to the Court's decision, the cogent analysis set forth in Defendant's brief cannot rescue the ALJ's failure to provide any meaningful analysis of Plaintiff's allegations. *See Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) ("In reviewing an ALJ's findings and conclusions, this Court shall not accept appellate counsel's *post hoc* rationalization for agency action in lieu of [accurate] reasons and findings enunciated by the [Commissioner].") (internal citations and quotations omitted)). The ALJ instead references two office notes from early 2014, then bypasses the next four visits from 2014 during which Plaintiff lodges the same complaints of neuropathic symptoms, before citing the July 2015 surgery. AR 14-15. The ALJ then claims that Plaintiff's statements regarding the severity of his symptoms are not consistent "with the medical evidence and other evidence in the record for the reasons explained in this decision" (AR 14), yet the Court is unable to locate any such reasons in the opinion.

For example, the ALJ acknowledges Plaintiff's testimony that he could not walk or stand for long periods of time in 2014 (AR 14), yet points to no evidence that contradicts this assertion. To the contrary, the record supports Plaintiff's claim that he was struggling with ambulation and

---

[4] The transcript lists the referenced neurosurgeon's name as "Dr. Justice [PHONETIC]" (AR 52), although a review of the Tennessee Department of Health database suggests that this physician was in fact Dr. Joseph Jestus, a neurosurgeon who is based in Cookeville, Tennessee, which is not far from Plaintiff's hometown of Livingston, Tennessee. AR 77.

experiencing frequent falls both in 2014 and following the DLI. AR 236, 316. Plaintiff also testified that the neuropathic symptoms that caused such walking and standing problems were the same from 2014 through the date of his hearing (AR 54-55), a claim that similarly goes unrefuted in the administrative opinion. While the ALJ is not required to cite each individual piece of evidence in the record, such omissions, coupled with her failure to address Plaintiff's testimony regarding his initial neurological consultation attempt and evidence that Plaintiff's symptoms "developed gradually" beginning in 2013 and "continue[] to worsen" (AR 314), render her conclusion deficient under the plain language of SSR 16-3p:

> In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his … symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." … The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

2017 WL 5180304, at *10. The ALJ's failure in this regard warrants reversal.

Although an ALJ's findings with respect to the credibility of a claimant "are to be accorded great weight and deference," they must nevertheless be supported by substantial evidence. *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). *See also Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016) (the ALJ's credibility determination must be affirmed if it is "reasonable and supported by substantial evidence"). Because the ALJ cites no evidence to discredit Plaintiff's allegations regarding the onset of his disabling symptoms, her conclusions lack the support of substantial evidence. Remand for further consideration is therefore appropriate.

**2. The opinion of Dr. Leonardo Rodriguez-Cruz.**

Plaintiff next contends that the ALJ erred by granting little weight to the "report" provided by Dr. Rodriguez-Cruz. DE 16 at 14. Although not explicitly identified in his brief, Plaintiff appears to reference the following passage from an office note signed by Dr. Rodriguez-Cruz on August 23, 2016:

> [Plaintiff] demonstrates continued unimproved spinal cord injury at the level of C6-7. This has affected his ability to walk and his ability to use either hand in any meaningful manner for more than a few minutes at a time. This condition is permanent as many spinal cord injuries are. I have not seen to date [nor] do I expect to see in the future any improvement in hand function, leg function, or gait. I do not see how this individual may be able to be involved in any gainful employment because of this.

AR 384. This excerpt, however, arguably lacks the specificity necessary to constitute a "medical opinion" for purposes of weight allocation, as such an opinion requires a statement regarding "what [the claimant] can still do despite [his] impairment(s)[] and [his] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). This is crucial to the ALJ's evaluation given that "disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (citing *Higgs*, 880 F.2d at 863). Dr. Rodriguez-Cruz's vague assessment of Plaintiff's ability to walk and use his hand and accompanying opinion that Plaintiff cannot engage in gainful employment is more akin to a "conclusory statement" about the nature of the condition, which is not entitled to any special consideration. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 441 (6th Cir. 2010).

Moreover, Defendant correctly notes that Dr. Rodriguez-Cruz makes no suggestion that his assessment applies to the pre-DLI period, which is the critical issue in this case. *See Stark v. Comm'r of Soc. Sec.*, No. 5:15-cv-477, 2016 WL 1077100, at *6 (N.D. Ohio Mar. 18, 2016) ("[A] treating physician's opinion rendered after the DLI may be considered *to the extent it illuminates*

*[Plaintiff's] health before the expiration of [his] insured status*.") (quoting *Nagle v. Comm'r of Soc. Sec.*, 191 F.3d 452 (table), 1999 WL 777355, *1 (6th Cir. September 21, 1999) (emphasis added). The opinion is thus of little value to the issue of whether Plaintiff became disabled prior to December 31, 2014. *See Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517 (6th Cir. 2010) ("[A] treating physician's opinion is minimally probative when the physician began treatment after the expiration of the claimant's insured status.") (citing *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). The Court therefore finds no reversible error stemming from the ALJ's consideration of Dr. Rodriguez-Cruz's opinion.[5]

### V. RECOMMENDATION

For the above stated reasons, it is respectfully recommended that Plaintiff's motion for judgment on the administrative record (DE 15) be GRANTED and the Commissioner's decision be REVERSED and REMANDED for further consideration.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (*en*

---

[5] Plaintiff makes no argument that Dr. Rodriguez-Cruz represents a treating physician whose opinion is subject to the "treating physician rule" contained 20 C.F.R. § 404.1527(c)(2). Any argument that the ALJ violated the treating physician rule is therefore waived. *See McClellan v. Astrue*, 804 F. Supp. 2d 678, 688 (E.D. Tenn. 2011) (assignments of error not made by claimant are waived).

*banc*). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

        Respectfully submitted,

        BARBARA D. HOLMES
        United States Magistrate Judge